**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| HAKEEM MEADE, on behalf of himself and all others similarly situated,<br><br>                   Plaintiff,<br><br>v.<br><br>PAUL A. BONIN, Judge of the Orleans Parish Criminal District Court, and<br>ETOH MONITORING, LLC, a Louisiana Limited Liability Company,<br><br>                   Defendants. | No. _____<br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## Introduction

1. When judicial officers make decisions concerning the liberty or property of defendants appearing before them, the Fourteenth Amendment to the U.S. Constitution mandates that these decisions be free from bias or the appearance of bias. This requirement means that judicial decisions must be, and must appear to be, based on the pursuit of justice and the protection of the public, and not the personal, financial, political, or institutional interests of the judge or others. In this case, Defendant Judge Paul A. Bonin ("Judge Bonin"), a judge on the Orleans Parish Criminal District Court, required defendants in his court to wear ankle monitoring devices. This is a routine judicial function. Judge Bonin's decisions, however, raise serious constitutional problems. He required, steered, or otherwise permitted these defendants to enter into ankle monitoring service agreements with Defendant ETOH Monitoring, LLC ("ETOH"), a private company with which Judge Bonin has long-standing personal, political, and financial ties, and neither Judge Bonin nor ETOH disclosed this information to these defendants. This violated the defendants' rights under the Due Process Clause of the Fourteenth Amendment.

2. Therefore, Plaintiff Hakeem Meade, on his behalf and on behalf of all others similarly situated, brings this lawsuit to obtain an order from this Court (i) certifying a class of all people

1

who have appeared before Judge Bonin and who have been ordered, steered, or permitted by

Judge Bonin to enter into a contract or otherwise obtained ankle monitoring services from ETOH

since January 1, 2017, (ii) declaring that Judge Bonin and ETOH violate the constitutional rights

of defendants when Judge Bonin steers, requires, or permits defendants to obtain ankle

monitoring services from ETOH without disclosing his relationship with the company or its

principals, (iii) enjoining ETOH from entering into contracts or otherwise providing ankle

monitoring services with defendants in cases before Judge Bonin, and (iv) mandating that ETOH

disgorge and return to members of the class any fees or funds it collected from class members.

**Jurisdiction and Venue**

3.   This is a civil rights case brought under 42 U.S.C. § 1983 and the Fourteenth Amendment

to the United States Constitution.

4.   This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201, and 2202.

5.   Venue is proper in this Court under 28 U.S.C. § 1391.

**Parties**

6.   Hakeem Meade is an adult citizen of the United States and a resident of New Orleans,

Louisiana. He brings this class action for declaratory and injunctive relief on behalf of himself

and as the putative class representative for all others similarly situated, against both Defendants.

Judge Bonin ordered Hakeem to pretrial ankle monitoring by ETOH and required Hakeem to pay

hundreds of dollars in pretrial monitoring fees to ETOH, upon threat of pretrial jailing for failure

to pay. Hakeem was unaware of any relationship between Judge Bonin and ETOH until around

December 2019. Hakeem is not currently party to any state court proceedings and is not on ankle

monitoring. ETOH continues to seek payment of fees from Hakeem.

2

7.   Defendant Paul A. Bonin is a Judge of the Orleans Parish Criminal District Court in New Orleans, Louisiana, elected in 2016. Since 2017, Judge Bonin has ordered individuals accused of crimes appearing before him, including Hakeem, to pretrial ankle monitoring by ETOH, a private company with which Bonin has a personal, professional, political, and financial relationship. Judge Bonin is sued for prospective declaratory relief only.

8.   Defendant ETOH Monitoring, LLC is a Louisiana limited liability company domiciled in New Orleans. Its founders and/or managers are Leonard L. Levenson and Christian W. Helmke, residents of Louisiana. ETOH, Levenson and Helmke, and entities controlled by them have personal, professional, financial, and political relationships with Judge Bonin. Since 2017, Judge Bonin has ordered many people, like Hakeem, to pay ankle monitoring fees to ETOH, including under threat of jailing, like Hakeem. ETOH continues to seek payment of fees from Hakeem and others. ETOH's ankle monitoring is a form of government custody; it is a public function that ETOH performs jointly with Judge Bonin. ETOH is sued for declaratory and injunctive relief, including but not limited to disgorgement of fees.

## Factual Allegations

**Ankle monitoring is a government function.**

9.   Ankle monitoring is a means of monitoring the actions of a criminal defendant. When a judge orders a defendant to wear an ankle monitor, a government entity or a private company hired by the government places a GPS device on the defendant's ankle and the device records the defendant's location. The device allows the entity to determine, among other things, whether a defendant is complying with a curfew or is staying within geographical confines.

10. Nationally, an ankle monitor typically costs the defendant at least $10 a day, along with an installation fee of $100 or more. Judges often require defendants to wear ankle monitors for

several months. For indigent defendants, wearing an ankle monitor for any length of time can cause severe financial hardships.

11. Unlike some municipalities, New Orleans Parish does not operate its own ankle monitoring service. Instead, when judges on the Orleans Parish Criminal District Court require defendants to sign up for ankle monitoring, the defendants may choose from among three ankle monitoring companies operating in the Parish. One of those companies is ETOH.

12. Ankle monitoring is a significant deprivation of liberty—especially pretrial.

13. When defendants are charged fees for ankle monitoring, it is also a significant deprivation of property. For instance, ETOH charges defendants (for their own governmental oversight) a $100 installation fee plus $10 per day (i.e. between $280 and $310 per month).

14. Because ankle monitoring companies perform public functions (namely, custody and control of criminal defendants through monitoring), their actions implicate the Fourteenth Amendment's guarantee of due process.

**Judge Bonin ordered Hakeem to pay pretrial ankle monitoring fees to ETOH.**

15. In February 2016, Hakeem survived a horrific shooting. He had paid a local auto shop owner for car repairs. The men had an argument over a delay in the work. The shop owner then chased Hakeem and shot him six times, including in the head. The shop owner also shot Hakeem's girlfriend of the time, who was pregnant with their twins. She survived, but tragically the twins did not.

16. While Hakeem was still hospitalized and recovering from the attack, he learned that he was being charged with possession of a firearm by a felon and aggravated assault with a firearm—both charges stemming from his own shooting.

17. After Hakeem turned himself in to police, he was held in pretrial detention for two to three days then released on bond, without ankle monitoring.

18. After being released from pretrial detention, Hakeem appeared in court for more than half a dozen pretrial appearances before multiple judges of the Orleans Parish Criminal District Court—all without ankle monitoring.

19. After about nine months of these unmonitored pretrial appearances, Hakeem was transferred to Judge Bonin's court in February 2017.

20. From February 2017 to August 2017, Hakeem continued appearing for unmonitored pretrial proceedings before Judge Bonin. He appeared about once a month. Each time, Judge Bonin ordered him to take a drug test, which he always passed.

21. By August 2017, Hakeem had been dutifully appearing for pretrial proceedings without ankle monitoring for over a year—including for about six months with Judge Bonin.

22. In August 2017, Judge Bonin suddenly ordered Hakeem to ankle monitoring at Hakeem's expense. He told Hakeem to go to ETOH for these services.

23. When Judge Bonin ordered Hakeem to ankle monitoring by ETOH, Hakeem does not recall the judge stating that he was a flight risk or that he posed a threat to public safety.

24. Hakeem did not understand why Judge Bonin was suddenly depriving him of his pretrial liberty and property, after more than a year of incident-free pretrial appearances and drug tests.

25. At the August 2017 hearing at which Judge Bonin ordered Hakeem to ankle monitoring, Judge Bonin gave no explanation for his order.

26. At the August 2017 hearing at which Judge Bonin ordered Hakeem to ankle monitoring Judge Bonin did not disclose any personal, financial, political, or other ties with ETOH or its principals.

27. Under Judge Bonin's order, Hakeem was required to submit to ETOH's custody without delay.

28. Paying ETOH's fees was a condition of Judge Bonin's order and nonpayment could result in Hakeem's pretrial jailing.

29. When Hakeem submitted to ETOH's custody, an ETOH employee told Hakeem that the company would be sending detailed reports to Judge Bonin—not only regarding his compliance with the geographic and curfew restrictions but also his payment (and nonpayment) of ETOH's daily fees.

30. Judge Bonin's order deprived Hakeem of his pretrial liberty by geographic and curfew restrictions, which were enforced by ETOH acting together with Judge Bonin.

31. Judge Bonin's order also deprived Hakeem of his property for ETOH's benefit. Acting together with Judge Bonin, ETOH charged Hakeem $10 per day (i.e. $280 to $310 per month) while he was in ETOH's custody.

32. Even though Hakeem was employed, paying approximately $300 per month was a significant financial burden and deprivation of his property.

33. As a result of Judge Bonin's order, Hakeem also had to miss work for monitoring check-ins with ETOH. These mandatory check-ins and the accompanying lost wages were additional pretrial deprivations of Hakeem's liberty and property by Judge Bonin and ETOH.

34. The ankle monitoring impacted Hakeem's employment so significantly that he had to change employers.

35. In October 2017, Hakeem appeared for another pretrial hearing before Judge Bonin. He asked the judge to release him from ankle monitoring, and Judge Bonin agreed.

36. By the time Judge Bonin released Hakeem from ETOH's custody in October 2017, Hakeem had accumulated about $600 in ETOH fees. He had not managed to pay in full but continued making payments on the understanding that he might otherwise be put in jail.

37. During at least one subsequent pretrial hearing, Judge Bonin reminded Hakeem that he still owed money to ETOH and that Hakeem's failure to pay ETOH's fees could violate his bond conditions. Hakeem understood this as Judge Bonin explicitly conditioning Hakeem's freedom from pretrial jailing on his ability to pay ETOH.

38. Understanding that his freedom was contingent on paying ETOH, Hakeem continued paying ETOH until June 2018, by which time he had managed to pay about $280 out of $600 he owed.

39. Hakeem stopped paying ETOH's fees after June 2018 because it became clear to him that he was likely to be sentenced to time in prison, so he began putting all of his non-living-expenses income toward savings for his family and his son.

40. Feeling trapped by his criminal charges, Hakeem pleaded guilty in September 2018 to avoid the risk of twenty years in prison if convicted at trial. Judge Bonin gave Hakeem until the end of the year to get his affairs in order—without ankle monitoring—before sentencing. Hakeem appeared for sentencing early, and in October 2018 Judge Bonin sentenced Hakeem to five years in prison.

41. Hakeem served over eleven months in prison before being released early. He was incarcerated from on or about October 26, 2018, until on or about October 15, 2019.

42. Hakeem is not currently party to any state court proceedings.

43. Hakeem now works in dredging along the Mississippi River and is rebuilding his life.

44. ETOH is still sending Hakeem collection letters for the $322 in ankle monitoring fees that he was unable to pay before being incarcerated.

**Judge Bonin has personal, professional, and political relationships with ETOH's principals.**

45. From 2008 to 2016, Judge Bonin was a state appellate judge, elected to serve on the Louisiana Fourth Circuit Court of Appeal.

46. In 2016, he ran for and won election to a lower court: the Orleans Parish Criminal District Court, on which he still serves as one of thirteen criminal trial court judges.

47. Judge Bonin presides over criminal cases, including pretrial, trial, and sentencing proceedings.

48. Before his political and judicial career, one of Bonin's legal partners for more than a decade was Leonard L. Levenson, a Louisiana licensed attorney.

49. In 2006, Levenson and Christian W. Helmke (also a Louisiana licensed attorney) founded ETOH Monitoring, LLC, a Louisiana limited liability company domiciled in New Orleans.

50. Levenson and Helmke are principals of ETOH.

51. Levenson is the manager of Leonard L. Levenson & Associates, a Louisiana professional law corporation that he founded around 2000.

52. Helmke was the manager of the Law Office of Christian W. Helmke, a Louisiana limited liability company, from 2015 to 2017.

53. On information and belief, Levenson and Helmke are both now employed at Leonard L. Levenson & Associates, PLC, Levenson's current law office.

54. Between 2005 and 2016, via these eponymous law offices, Levenson and Helmke donated and loaned a total of $9,650 to the three judicial election campaigns of Levenson's former law partner: Judge Bonin.

55. Over the course of Judge Bonin's three judicial election campaigns (2008, 2012, 2016), Levenson and Helmke made seven donations and one loan to Judge Bonin's campaigns.

56. In 2016 alone—when Judge Bonin first ran for election to the Criminal District Court—Levenson and Helmke made three donations (totaling $3,550) and one loan (of $1,000) to his election campaign.

57. On information and belief, from 2008 to 2016, Levenson and Helmke donated to four other Orleans Parish Criminal District Court judges' election campaigns as well, but significantly less and significantly less often than to Bonin's.

58. On information and belief, unlike with Bonin, none of Levenson's and Helmke's contributions to these other judges were loans.

59. On information and belief, the other private company that provides ankle monitoring services to the Orleans Parish Criminal District Court does not have personal, professional, or political relationships with Judge Bonin, and has not donated or loaned money to Judge Bonin's judicial election campaigns.

**Judge Bonin has made or has appeared to make ankle monitoring decisions—including pretrial jailing decisions—based on the financial interests of ETOH, the private company with which he has personal, professional, financial, and political relationships.**

60. In making their election donations and loan to Judge Bonin, Levenson and Helmke do not appear to have violated any laws. Nor does Judge Bonin appear to have violated any laws in accepting the donations and loan.

61. However, neither Judge Bonin nor ETOH has disclosed these donations and this debt directly to the defendants that Judge Bonin orders to ankle monitoring.

62. Moreover, defendants' ability to pay ETOH's fees has dictated Judge Bonin's custody decisions.

63. These ties and actions bristle with bias and conflicts of interest, or at the very least the appearance thereof. They taint all of Judge Bonin's ankle monitoring decisions since 2017 in which ETOH entered into contracts with defendants and give rise to the perception that judicial decision-making has been co-opted by the profit motive of a private company with which the judge has a significant relationship.

64. In May, 2019, judicial watchdog organization Court Watch NOLA (CWN)[1] issued a report revealing that Judge Bonin "made it a regular practice of recommending defendants use ETOH" and emailing defense attorneys "on how the defendant could sign up for ankle monitoring services," while including ETOH managers on the emails. CWN found that he also required his staff to "provide the defendant or the defendant's family members with the contact information for ETOH."[2]

65. CWN also found that on "several occasions, Judge Bonin refused to release the defendants from jail until the family had arranged for ETOH to set up ankle monitoring," and he regularly refused to release defendants from ankle monitoring "solely because the defendants had not paid ETOH all the remaining fees."[3]

66. CWN found that Judge Bonin made release from ankle monitoring contingent on "financial obligations owed to the ankle monitoring company."[4] And he "threatened to put defendants back in jail and set bond for their failure to pay their remaining debts."[5]

---

[1] CWN, "2018 Review," at 3, 15-24 & nn.1-4, 52-107, *available at* https://www.courtwatchnola.org/wp-content/uploads/2018-Annual-Report.pdf.
[2] *Id.* at 21.
[3] *Id.* at 22.
[4] *Id.*
[5] *Id.*

67. CWN concluded "Judge Bonin was the only judge found to have required a defendant to use an ankle monitor and then steered the defendant to pay a specific ankle monitoring company (over other companies) from which the judge had received campaign contributions or a loan."[6]

68. Investigations and public record requests have revealed that at least into 2019, Judge Bonin's and ETOH's practices continued—including ordering defendants to ankle monitoring by ETOH (e.g., "I have modified the bail conditions of [defendant] to require his enrollment with your firm at his expense for GPS monitoring"); conditioning release from monitoring on payments to ETOH (e.g., "Mr. [defendant] will be able to have the monitor removed once his balance is paid in full."); and relying on judicial power to collect fees (e.g., "We ask that he be reminded of his continuing obligation to make payments to our company.").

69. On at least one occasion in 2019, ETOH emailed Judge Bonin when a defendant that the company was expecting did not show up, prompting Judge Bonin to threaten the defendant's immediate arrest—until the defendant's attorney alerted Judge Bonin that the defendant had complied with Judge Bonin's ankle monitoring order, but had simply done so with a different company.

70. To this day, ETOH also continues to pursue people for the collection of outstanding fees accumulated as part of the judge's and the company's practices, including Hakeem, and at least one person who never appeared before Judge Bonin, but whose ex-boyfriend was ordered to ankle monitoring with ETOH by Judge Bonin in 2018.

71. As of the date of this complaint, and on information and belief, neither Judge Bonin nor ETOH have directly disclosed their ties to the members of the putative class.

---

[6] *Id.* at 19.

**Class Action Allegations**

72. Since 2017, Judge Bonin has ordered defendants to pay fees for their own governmental custody to a private party in which the judge has various interests, with neither the judge nor the company disclosing those interests or the availability of alternative providers.

73. Accordingly, Hakeem respectfully seeks certification of the following class under Fed. R. Civ. P. 23(b)(2) ("Rule 23(b)(2)"):

> Every individual who, since January 1, 2017, has been or will be ordered, steered, or permitted by Judge Bonin to contract for or otherwise receive or pay for ankle monitoring services by ETOH.

74. This case satisfies the requirements for certification of a class under Fed. R. Civ. P. 23(a) ("Rule 23(a)").

75. Numerosity under Rule 23(a)(1): The putative class is so numerous that joinder of all members is impracticable. There are at least 52 potential class members who have been ordered, steered, or otherwise permitted to contract for or otherwise receive ankle monitoring services with ETOH while appearing before Judge Bonin.

76. Commonality under Rule 23(a)(2): There are questions of law and fact common to the class, namely, whether it violates the Due Process Clause of the Fourteenth Amendment for a judge to order, steer, or otherwise permit defendants appearing before him to enter into ankle monitoring service agreements with a company with which the judge has personal, financial, and political ties.

77. Typicality under Rule 23(a)(3): The claims of the representative party are typical of the claims of the class as a whole in that Hakeem has suffered the same constitutional violations as the other members of the class.

78. <u>Adequacy of representation under Rule 23(a)(4)</u>: Hakeem will fairly and adequately protect the interests of the class he seeks to represent. Hakeem is a member of the proposed class and his interests are aligned with the interests of putative class members. Hakeem's interest is seeking to end violation of defendants' due process rights by Judge Bonin and ETOH. Hakeem seeks declaratory and injunctive relief for the injury caused by these practices. These interests are shared by all class members.

79. Named Plaintiff is represented pro bono by the Institute for Justice and by the Law Office of William Most, L.L.C. The Institute is a 501(c)(3) non-profit organization with experience litigating class-action lawsuits around the country, including civil-rights cases involving similar due process claims litigated in federal court in Chicago, Illinois; Philadelphia, Pennsylvania; and Pagedale, Missouri.

80. The Law Office of William Most, L.L.C. is a law firm based in New Orleans, with experience litigating class-action lawsuits around the country, including a civil rights class-action case under the Fourteenth Amendment in federal court in Louisiana.

81. The representative party and his counsel will fairly and adequately protect the interests of the class.

82. The members of the class are readily and objectively ascertainable because the Orleans Parish Criminal District Court, Judge Bonin's chambers, and ETOH maintain records of every individual who, since January 1, 2017, has been or will be ordered to ankle monitoring by Judge Bonin and has paid, will pay, has incurred, or will incur fees for ankle monitoring by ETOH, and in what amounts.

13

83. Class certification is appropriate under Rule 23(b)(2) because Judge Bonin and ETOH have acted or refused to act on grounds and in ways that apply generally to the class, so that declaratory and injunctive relief are appropriate respecting the class as a whole.

84. Namely, Judge Bonin and ETOH have required, steered, or otherwise permitted defendants to pay ankle monitoring fees to a company in which Judge Bonin has personal, professional, financial, and political interests, without disclosure of these interests or of alternative options, and they have conditioned custody determinations on the ability to pay those fees, thus creating a custodial system fraught with bias or the appearance of bias.

85. A declaration that deprivations of liberty and property pursuant to these practices violate due process because they create bias or the appearance of bias will provide relief for the class as a whole. So, too, will an injunction requiring ETOH to return with interest the fees it has collected since January 1, 2017, and cancel any outstanding fees.

86. For these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this controversy, and to avoid inconsistent outcomes. Individual challenges to Judge Bonin's and ETOH's practices are impracticable, in part because Judge Bonin's and ETOH's practices remain almost entirely undisclosed to those affected by them, and, in any event, the costs associated with bringing individual challenges would almost certainly be prohibitive of a full and fair process for vindicating individuals' constitutional rights. A class action will allow for effective, class-wide relief to remedy Judge Bonin's and ETOH's unconstitutional practices.

87. Injunctive relief for the return of the class's property as a whole is appropriate and does not require individualized determinations of entitlement to relief, but rather only the ministerial act of restoring to each person the amount he or she paid, as documented in Defendants'

regularly maintained records, plus a class-wide percentage of interest that also requires no individualized determinations of entitlement.

### Causes of Action

### Count 1
### Class Claim Under 42 U.S.C. § 1983 – Fourteenth Amendment Due Process
### (Both Defendants for Class-Wide Declaratory Relief)

88. Plaintiff re-alleges and incorporates by reference each and every allegation above.

89. Plaintiff brings this claim against both Defendants on behalf of himself and the class, for class-wide declaratory relief.

90. The Due Process Clause of the Fourteenth Amendment applies to private actors in joint activity with state actors or performing public functions, as is ETOH here.

91. The Due Process Clause of the Fourteenth Amendment secures the fundamental right to neutrality in judicial decision-making. It prohibits even the appearance of self-interest or bias. A showing of actual influence is not required.

92. These principles apply to decisions by a judge that benefit or may appear to benefit his or her own personal, financial, professional, institutional, or political interest.

93. These principles also apply to decisions by a judge that benefit or may appear to benefit a third party in which the judge has a personal, financial, professional, institutional, or political interest.

94. Judge Bonin's and ETOH's practice of requiring criminal defendants to pay ankle monitoring fees to ETOH—a company in which the judge has personal, financial, professional, and political interests—and their practice of tying custody determinations to the payment of those fees to ETOH are unconstitutional because they demonstrate judicial bias and conflicts of interest in violation of due process.

**Count 2**
**Class Claim Under 42 U.S.C. § 1983 – Fourteenth Amendment Due Process**
**(Defendant ETOH Monitoring, LLC for Class-Wide Injunctive Relief)**

95. Plaintiff re-alleges and incorporates by reference each and every allegation above.

96. Plaintiff brings this claim against Defendant ETOH Monitoring, LLC on behalf of himself and the class, for class-wide injunctive relief.

97. The Due Process Clause of the Fourteenth Amendment applies to private actors in joint activity with state actors or performing public functions, as is ETOH here.

98. The Due Process Clause of the Fourteenth Amendment secures the fundamental right to neutrality in judicial decision-making. It prohibits even the appearance of self-interest or bias. A showing of actual influence is not required.

99. These principles apply to decisions by a judge that benefit or may appear to benefit his or her own personal, financial, professional, institutional, or political interest.

100.     These principles also apply to decisions by a judge that benefit or may appear to benefit a third party in which the judge has a personal, financial, professional, institutional, or political interest.

101.     Judge Bonin's and ETOH's practice of requiring criminal defendants to pay ankle monitoring fees to ETOH—a company in which the judge has personal, financial, professional, and political interests—and their practice of tying custody determinations to the payment of those fees to ETOH are unconstitutional because they demonstrate judicial bias and conflicts of interest in violation of due process.

102.     This Court should issue an order enjoining ETOH from engaging in these unconstitutional practices.

103.     This Court should issue an order enjoining ETOH from collecting outstanding fees incurred by the class pursuant to these unconstitutional practices, and from assessing future fees against the class pursuant to these unconstitutional practices.

104.     This Court should issue a mandatory injunction requiring ETOH to return to the members of the class the fees it has collected from such members since January 1, 2017, with interest, and to cancel any outstanding fees owed by the class.

### Request for Relief

Wherefore, Plaintiff respectfully requests that this Court:

A.  Certify a class under Federal Rule of Civil Procedure 23(b)(2) consisting of: "Every individual who, since January 1, 2017, has been or will be ordered, steered, or permitted by Judge Bonin to contract for or otherwise receive or pay for ankle monitoring services by ETOH."

B.  Issue a class-wide order declaring that, absent full disclosure by Judge Bonin and ETOH directly to defendants appearing before Judge Bonin of Judge Bonin's and ETOH's personal, financial, professional, and political relationships and of the availability of the alternative ankle monitoring providers, and the defendants' knowing and voluntary consent, it is unconstitutional under the Due Process Clause of the Fourteenth Amendment for Judge Bonin to require, steer, or otherwise permit criminal defendants appearing before him to pay ankle monitoring fees to ETOH, a company in which the judge has personal, financial, professional, and political interests.

C.  Issue a permanent class-wide injunction preventing ETOH from entering into contracts, or otherwise agreeing to provide for a fee, ankle monitoring services with defendants appearing before Judge Bonin absent full disclosure by Judge Bonin and ETOH directly to defendants appearing before Judge Bonin of Judge Bonin's and ETOH's personal, financial, professional,

and political relationships and of the availability of alternative ankle monitoring providers, and the defendants' knowing and voluntary consent.

D.  Issue a permanent class-wide injunction against ETOH's collection of outstanding fees incurred by the class, and against assessment of future fees to the class.

E.  Issue a permanent class-wide injunction requiring ETOH to disgorge and return to the members of the class the fees it has collected since January 1, 2017, with interest, and to cancel any outstanding fees owed by the class.

F.  Award Plaintiff his attorney fees, costs, and expenses under 42 U.S.C. § 1988 and any other applicable provisions of law or equity.

G.  Award Plaintiff any further equitable or legal relief the Court may deem just and proper.

Dated: May 14, 2020                              Respectfully Submitted,


                                                 /s/ William Most
                                                 William Most (LA Bar No. 36914)
                                                 LAW OFFICE OF WILLIAM MOST, L.L.C.
                                                 201 St. Charles Ave., Ste. 114, # 101
                                                 New Orleans, LA 70170
                                                 (504) 509-5023
                                                 williammost@gmail.com

                                                 William R. Maurer (WA Bar No. 25451)*
                                                 INSTITUTE FOR JUSTICE
                                                 600 University Street, Suite 1730
                                                 Seattle, WA 98101
                                                 (206) 957-1300
                                                 wmaurer@ij.org

                                                 Jaba Tsitsuashvili (DC Bar No. 1601246)*
                                                 INSTITUTE FOR JUSTICE
                                                 901 North Glebe Road, Suite 900
                                                 Arlington, VA 22203
                                                 (703) 682-9320
                                                 jtsitsuashvili@ij.org

                                                 * *Pro hac vice application forthcoming*