**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| HAKEEM MEADE and MARSHALL SOOKRAM, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>PAUL A. BONIN, Judge of the Orleans Parish Criminal District Court, and ETOH MONITORING, LLC, a Louisiana Limited Liability Company,<br><br>                    Defendants. | No. 2:20-cv-01455<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br>**FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## Introduction

1.   When judges make decisions affecting the liberty or property of defendants appearing before them, the Fourteenth Amendment requires these decisions to be free from bias or the appearance of bias. This means that judicial decisions must be, and must appear to be, based on the pursuit of justice and the protection of the public, and not on the personal, financial, professional, political, or institutional interests of the judge or others. In this case, Defendant Judge Paul A. Bonin ("Judge Bonin"), a judge on the Orleans Parish Criminal District Court, requires defendants in his court to wear ankle monitoring devices. This is a routine judicial function. Judge Bonin's decisions, however, raise serious constitutional problems. He required, steered, or otherwise permitted these defendants to enter into ankle monitoring service agreements with and pay significant fees to Defendant ETOH Monitoring, LLC ("ETOH")—a private company with which Judge Bonin has long-standing personal, financial, professional, and political ties—and neither Judge Bonin nor ETOH disclosed those ties to these defendants. This violated the defendants' rights under the Due Process Clause of the Fourteenth Amendment.

2.   Therefore, Plaintiffs Hakeem Meade and Marshall Sookram, on their behalf and on behalf of all others similarly situated, seek an order from this Court (i) certifying a class of all people who have appeared before Judge Bonin and who have been ordered, steered, or permitted by Judge Bonin to enter into a contract or otherwise obtain or pay for ankle monitoring services from ETOH since January 1, 2017, (ii) declaring that Judge Bonin and ETOH violate the constitutional rights of defendants when Judge Bonin orders, steers, or permits defendants to obtain and pay for ankle monitoring services from ETOH without disclosing his relationship with the company or its principals, (iii) enjoining ETOH from entering into contracts with or otherwise providing ankle monitoring services to defendants in cases before Judge Bonin without disclosing his relationship with the company or its principals, and (iv) mandating that ETOH disgorge and return to members of the class any fees or funds it collected from class members and cancel any pending or outstanding fees due from class members.

## Jurisdiction and Venue

3.   This is a civil rights case brought under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

4.   This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201, and 2202.

5.   Venue is proper in this Court under 28 U.S.C. § 1391.

## Parties

6.   Hakeem Meade is an adult citizen of the United States and a resident of New Orleans, Louisiana. He brings this class action for declaratory and injunctive relief on behalf of himself and as the putative class representative for all others similarly situated, against both Defendants. Judge Bonin ordered Hakeem to pretrial ankle monitoring by ETOH and required Hakeem to pay hundreds of dollars in pretrial monitoring fees to ETOH, upon threat of pretrial jailing for failure

2

to pay. Hakeem was unaware of any relationship between Judge Bonin and ETOH until around December 2019. Hakeem is not currently party to any state court proceedings and is not on ankle monitoring. ETOH continues to seek payment of fees from Hakeem.

7.   Marshall Sookram is an adult citizen of the United States and a resident of River Ridge, Louisiana. He brings this class action for declaratory and injunctive relief on behalf of himself and as the putative class representative for all others similarly situated, against both Defendants. Judge Bonin ordered Marshall to pretrial ankle monitoring and required Marshall to pay well over $1,000 in pretrial ankle monitoring fees to ETOH. Judge Bonin conditioned Marshall's release from ankle monitoring on his payment of ETOH's fees. Marshall was unaware of any relationship between Judge Bonin and ETOH until around March 2020. Marshall is not currently party to any state court proceedings and is not on ankle monitoring.

8.   Defendant Paul A. Bonin is a Judge of the Orleans Parish Criminal District Court in New Orleans, Louisiana, elected in December 2016. Since 2017, Judge Bonin has ordered or steered individuals accused of crimes appearing before him, including Hakeem and Marshall, to pretrial ankle monitoring by ETOH, a private company with which Bonin has a personal, financial, professional, and political relationship. Judge Bonin is sued for declaratory relief only.

9.   Defendant ETOH Monitoring, LLC is a Louisiana limited liability company domiciled in New Orleans. Its founders and/or managers are Leonard L. Levenson and Christian W. Helmke, residents of Louisiana. ETOH, Levenson and Helmke, and entities controlled by them have personal, financial, professional, and political relationships with Judge Bonin. Since 2017, Judge Bonin has ordered or steered many people, like Hakeem and Marshall, to pay ankle monitoring fees to ETOH—including under threat of jailing, like Hakeem, and as a condition of their release from custody, like Marshall. ETOH continues to seek payment of fees from Hakeem and others.

3

ETOH's ankle monitoring is a form of governmental custody; it is a public function that ETOH performs jointly with Judge Bonin. ETOH is sued for declaratory and injunctive relief, including but not limited to disgorgement and cancelation of the class's outstanding fees.

**Factual Allegations**

**Ankle monitoring is a government function.**

10. Ankle monitoring is a means of monitoring the actions of a criminal defendant. When a judge orders a defendant to wear an ankle monitor, a government entity or a private company working with the government places a GPS device on the defendant's ankle and the device records the defendant's location. The device allows the monitoring entity to determine, among other things, whether a defendant is complying with a curfew or is staying within geographical confines.

11. Nationally, an ankle monitor typically costs the defendant at least $10 a day, along with an installation fee of $50 to $100 or more. Judges often require defendants to wear ankle monitors for several months. For indigent defendants, wearing an ankle monitor for any length of time can cause severe financial hardships.

12. Unlike some municipal courts, the Orleans Parish Criminal District Court does not operate its own ankle monitoring service. Instead, when judges on the Orleans Parish Criminal District Court require defendants to sign up for ankle monitoring, the defendants may choose from among three ankle monitoring providers operating in the Parish. One of those providers is ETOH.

13. Ankle monitoring is a form of governmental custody and a significant deprivation of liberty—especially pretrial.

14. When defendants are charged fees for ankle monitoring, it is also a significant deprivation of property. For instance, ETOH charges defendants (for their own governmental oversight) a $100 installation fee plus $8.50 to $10 per day (i.e. between $238 and $310 per month).

15. Because ankle monitoring companies perform public functions (namely, custody and control of criminal defendants through monitoring and reporting), their actions implicate the Fourteenth Amendment's guarantee of due process.

**Judge Bonin ordered Hakeem to pay pretrial ankle monitoring fees to ETOH.**

16. In February 2016, Hakeem survived a horrific shooting. He had paid a local auto shop owner for car repairs. The men had an argument over a delay in the work. The shop owner then chased Hakeem and shot him six times, including in the head. The shop owner also shot Hakeem's girlfriend of the time, who was pregnant with their twins. She survived, but tragically the twins did not.

17. While Hakeem was still hospitalized and recovering from the attack, he learned that he was being charged with possession of a firearm by a person with a felony conviction and aggravated assault with a firearm—both charges stemming from his own shooting.

18. After Hakeem turned himself in to police, he was held in pretrial detention for two to three days then released on bond, without ankle monitoring.

19. After being released from pretrial detention, Hakeem appeared in court for more than half a dozen pretrial appearances before multiple judges of the Orleans Parish Criminal District Court—all without ankle monitoring.

20. After about nine months of these unmonitored pretrial appearances, Hakeem was transferred to Judge Bonin's court in February 2017.

5

21. From February 2017 to August 2017, Hakeem continued appearing for unmonitored pretrial proceedings before Judge Bonin. He appeared about once a month. Judge Bonin ordered him to take drug tests, which he always passed.

22. By August 2017, Hakeem had been dutifully appearing for pretrial proceedings without ankle monitoring for over a year—including for about six months with Judge Bonin.

23. In August 2017, Judge Bonin suddenly ordered Hakeem to ankle monitoring at Hakeem's expense. He told Hakeem to go to ETOH for these services.

24. When Judge Bonin ordered Hakeem to ankle monitoring by ETOH, Hakeem does not recall the judge stating that he was a flight risk or that he posed a threat to public safety.

25. Hakeem did not understand why Judge Bonin was suddenly depriving him of his pretrial liberty and property, after more than a year of incident-free pretrial appearances and drug tests.

26. At the August 2017 hearing at which Judge Bonin ordered Hakeem to ankle monitoring, Judge Bonin gave no explanation for his order.

27. At the August 2017 hearing at which Judge Bonin ordered Hakeem to ankle monitoring, Judge Bonin did not disclose any of his personal, financial, professional, political, or other ties with ETOH or its principals.

28. Under Judge Bonin's order, Hakeem was required to submit to ETOH's custody without delay.

29. Paying ETOH's fees was a condition of Judge Bonin's order, and nonpayment could result in Hakeem's pretrial jailing.

30. When Hakeem submitted to ETOH's custody, an ETOH employee told Hakeem that the company would be sending detailed reports to Judge Bonin—not only regarding his compliance

with the geographic and curfew restrictions, but also his payment (or nonpayment) of ETOH's daily fees.

31. Judge Bonin's order deprived Hakeem of his pretrial liberty by geographic and curfew restrictions, which were enforced by ETOH acting together with Judge Bonin.

32. Judge Bonin's order also deprived Hakeem of his property for ETOH's benefit. Acting together with Judge Bonin, ETOH charged Hakeem $10 per day (i.e. $280 to $310 per month) while he was in ETOH's custody.

33. Even though Hakeem was employed, paying approximately $300 per month was a significant financial burden and deprivation of his property.

34. As a result of Judge Bonin's order, Hakeem also had to miss work for monitoring check-ins with ETOH. These mandatory check-ins and the accompanying lost wages were additional pretrial deprivations of Hakeem's liberty and property by Judge Bonin and ETOH.

35. The ankle monitoring impacted Hakeem's employment so significantly that he had to change employers.

36. In October 2017, Hakeem appeared for another pretrial hearing before Judge Bonin. He asked the judge to release him from ankle monitoring, and Judge Bonin agreed.

37. By the time Judge Bonin released Hakeem from ETOH's custody in October 2017, Hakeem had accumulated about $600 in ETOH fees. He had not managed to pay in full but continued making payments on the understanding that he might otherwise be jailed by Judge Bonin.

38. During at least one subsequent pretrial hearing, Judge Bonin reminded Hakeem that he still owed money to ETOH and that Hakeem's failure to pay ETOH could violate his bond

conditions. Hakeem understood this as Judge Bonin explicitly conditioning Hakeem's freedom from pretrial jailing on his ability to pay ETOH.

39. Understanding that his freedom was contingent on paying ETOH, Hakeem continued paying ETOH until June 2018, by which time he had managed to pay about $280 out of about $600 he owed.

40. Hakeem stopped paying ETOH's fees after June 2018 because it became clear to him that he was likely to be sentenced to time in prison, so he began putting all of his non-living-expenses income toward savings for his family and his son.

41. Feeling trapped by his criminal charges, Hakeem pleaded guilty in September 2018 to avoid the risk of twenty years in prison if convicted at trial. Judge Bonin gave Hakeem until the end of the year to get his affairs in order—without ankle monitoring—before sentencing. Hakeem appeared for sentencing early, and in October 2018 Judge Bonin sentenced Hakeem to five years in prison.

42. Hakeem served over eleven months in prison before being released early. He was incarcerated from on or about October 26, 2018, until on or about October 15, 2019.

43. Hakeem is not currently party to any state court proceedings.

44. Hakeem now works in dredging along the Mississippi River and is rebuilding his life.

45. ETOH is still sending Hakeem collection letters for the approximately $322 in ankle monitoring fees that he was unable to pay before being incarcerated.

**Judge Bonin conditioned Marshall's release from ankle monitoring on full payment of ETOH's fees.**

46. In September 2017, Marshall was charged with three crimes in Orleans Parish Criminal District Court: simple criminal damage, possession of a weapon by a person with a felony conviction, and aggravated assault with a firearm. He contested the allegations.

8

47. Marshall was briefly held in pretrial detention. On or about September 3, 2017, he was released on bond by a magistrate judge, without ankle monitoring.

48. More than a month later, on October 13, 2017, Marshall appeared for arraignment before Judge Bonin. Judge Bonin ordered Marshall to ankle monitoring that day. Judge Bonin asked for Marshall's public defender's email address, which was consistent with Judge Bonin's practice of emailing attorneys the instructions for their clients to sign up for ankle monitoring with ETOH.

49. Marshall did not directly receive instructions for signing up with ETOH. Instead, a bondsman signed Marshall up with another company. That company charged Marshall a $50 installation fee and $10 per day of monitoring.

50. Marshall then appeared for at least two more pretrial hearings before Judge Bonin—in October and December 2017—without incident.

51. On February 23, 2018, Marshall's attorney told Judge Bonin that Marshall intended to switch to "another company that you had given me the phone number of." That company was ETOH, which offered to put Marshall "on a more graduated payment plan."

52. ETOH charged Marshall a $100 installation fee and between $8.50 and $10 per day of monitoring.

53. Marshall worked in food delivery at the time, and these pretrial fees were a significant financial burden and deprivation of property.

54. Marshall managed to pay ETOH about $150 per month—about half of his fees—and his balance with ETOH continued to mount.

55. Marshall continued making all his court appearances, passed every drug test ordered by Judge Bonin (at Marshall's expense), and continued paying ETOH to the best of his abilities.

56. On October 19, 2018, ETOH emailed Judge Bonin and his staff "to confirm that Mr. Sookram is allowed to be released from the GPS monitor."

57. Judge Bonin's administrative assistant responded that day, "Mr. Sookram will be able to have the monitor removed once his balance is paid in full."

58. ETOH communicated to Marshall that Judge Bonin's chambers had conditioned Marshall's release from ankle monitoring on paying all of ETOH's fees. Marshall then paid at least $500 (which he could afford only with the help of family) and was immediately freed from ankle monitoring.

59. On October 24, 2018, ETOH informed Judge Bonin that "Mr. Sookram has paid his balance in full" and "has no further obligation to make payments to our company."

60. Over the course of about eight months, Marshall paid ETOH well over $1,000.

61. In February 2020, to escape the specter of his criminal case—which by then was ongoing for over two years—Marshall pleaded guilty to a charge of disturbing the peace. All his other charges were dropped. Judge Bonin sentenced Marshall to four days of probation, without ankle monitoring.

62. Marshall is not currently party to any state court proceedings.

63. Marshall now owns his own small concessions and vending business, and he has turned around and rebuilt his life.

**Judge Bonin has personal, financial, professional, and political relationships with ETOH's principals.**

64. From 2008 to 2016, Judge Bonin was a state appellate judge, elected to serve on the Louisiana Fourth Circuit Court of Appeal.

65. In 2016, he ran for and won election to a lower court: the Orleans Parish Criminal District Court, on which he still serves as one of thirteen criminal trial court judges.

66. Judge Bonin presides over criminal cases, including pretrial, trial, and sentencing proceedings.

67. Before his political and judicial career, one of Bonin's legal partners for more than a decade was Leonard L. Levenson, a Louisiana licensed attorney.

68. In 2006, Levenson and Christian W. Helmke (also a Louisiana licensed attorney) founded ETOH Monitoring, LLC, a Louisiana limited liability company domiciled in New Orleans.

69. Levenson and Helmke are principals of ETOH.

70. Levenson is the manager of Leonard L. Levenson & Associates, a Louisiana professional law corporation that he founded around 2000.

71. Helmke was the manager of the Law Office of Christian W. Helmke, a Louisiana limited liability company, from 2015 to 2017.

72. On information and belief, Levenson and Helmke are now both employed at Leonard L. Levenson & Associates, PLC, Levenson's current law office.

73. Between 2005 and 2016, via these eponymous law offices, Levenson and Helmke donated and loaned a total of $9,650 to the three judicial election campaigns of Levenson's former law partner, Judge Bonin.

74. Over the course of Judge Bonin's three judicial election campaigns (2008, 2012, 2016), Levenson and Helmke made seven donations and one loan to Judge Bonin's campaigns.

75. In 2016 alone—when Judge Bonin first ran for election to the Criminal District Court— Levenson and Helmke made three donations (totaling $3,550) and one loan (of $1,000) to his election campaign.

76. On information and belief, from 2008 to 2016, Levenson and Helmke donated to four other Orleans Parish Criminal District Court judges' election campaigns as well, but significantly less and significantly less often than to Judge Bonin's.

77. On information and belief, unlike with Judge Bonin, none of Levenson's and Helmke's contributions to these other judges were loans.

78. On information and belief, the other private company that provides ankle monitoring services to the Orleans Parish Criminal District Court does not have personal, financial, professional, or political relationships with Judge Bonin, and has not donated or loaned money to Judge Bonin's judicial election campaigns.

**Judge Bonin has made or has appeared to make ankle monitoring decisions—including pretrial jailing decisions—based on the financial interests of ETOH, the private company with which he has personal, financial, professional, and political relationships.**

79. In making their election donations and loan to Judge Bonin, Levenson and Helmke do not appear to have violated any laws. Nor does Judge Bonin appear to have violated any laws in accepting the donations and loan.

80. However, neither Judge Bonin nor ETOH has disclosed these donations and this debt directly to the defendants that Judge Bonin orders to ankle monitoring. Nor has Judge Bonin disclosed to defendants the availability of alternative ankle monitoring providers when he ordered or steered the defendants to ETOH.

81. Moreover, defendants' ability to pay ETOH's fees has dictated Judge Bonin's custody decisions.

82. These ties and actions bristle with bias and conflicts of interest, or at the very least the appearance thereof. They taint all of Judge Bonin's ankle monitoring decisions since 2017 in which ETOH charged fees to defendants and give rise to the perception that judicial decision-

making has been co-opted by the profit motive of a private company with which the judge has significant relationships, including a creditor-debtor relationship.

83. In May 2019, judicial watchdog organization Court Watch NOLA (CWN)[1] issued a report revealing that Judge Bonin "made it a regular practice of recommending defendants use ETOH" and emailing defense attorneys "on how the defendant could sign up for ankle monitoring services," while including ETOH managers on the emails. CWN found that he also required his staff to "provide the defendant or the defendant's family members with the contact information for ETOH."[2]

84. CWN also found that on "several occasions, Judge Bonin refused to release the defendants from jail until the family had arranged for ETOH to set up ankle monitoring," and he regularly refused to release defendants from ankle monitoring "solely because the defendants had not paid ETOH all the remaining fees."[3]

85. CWN found that Judge Bonin made a defendant's release from ankle monitoring contingent on "financial obligations owed to the ankle monitoring company."[4] And he "threatened to put defendants back in jail and set bond for their failure to pay their remaining debts."[5]

86. CWN concluded, "Judge Bonin was the only judge found to have required a defendant to use an ankle monitor and then steered the defendant to pay a specific ankle monitoring company (over other companies) from which the judge had received campaign contributions or a loan."[6]

---

[1] CWN, "2018 Review," at 3, 15-24 & nn.1-4, 52-107, *available at* https://www.courtwatchnola.org/wp-content/uploads/2018-Annual-Report.pdf.
[2] *Id.* at 21.
[3] *Id.* at 22.
[4] *Id.*
[5] *Id.*
[6] *Id.* at 19.

87. Every month, ETOH sends Judge Bonin a Payment Status Report. It provides detailed information about each individual defendant's payment history and status, including each individual defendant's latest payment to ETOH and outstanding fees due to ETOH.

88. ETOH's Payment Status Reports to Judge Bonin include notations such as "Please note that the highlighted clients need attention." At least some clients are "highlighted" solely because they are behind on payments, including Hakeem.

89. At times, Judge Bonin has used his judicial power and position to ensure that defendants in his courtroom pay their debts to ETOH.

90. Specifically, investigations and public record requests have revealed that at least into 2019, Judge Bonin's and ETOH's practices continued, including but not limited to:

   a. ordering defendants to ankle monitoring by ETOH (e.g., "I have modified the bail conditions of [the defendant] to require his enrollment with your firm at his expense for GPS monitoring.");

   b. conditioning release from monitoring on payments to ETOH (e.g., "Mr. Sookram will be able to have the monitor removed once his balance is paid in full."); and

   c. relying on judicial power to collect fees (e.g., "We ask that he be reminded of his continuing obligation to make payments to our company.").

91. In January 2018, Judge Bonin ordered an indigent defendant to ankle monitoring at his expense. Judge Bonin told the defendant's attorney to expect an email regarding making arrangements with the ankle monitoring provider. The defendant was then placed on ankle monitoring by ETOH. Each time ETOH informed Judge Bonin of this indigent defendant's non-compliance with a term of his monitoring, ETOH added: "Also, please be advised that [the

defendant] is severely delinquent on the payment agreement established with our company. We ask that he be reminded of his continuing obligation to make payments to our company."

92. In February 2018, Judge Bonin told a defendant's grandfather that "[the defendant is] also going to be subject to the monitoring service that you need to have her on that and finished by tomorrow." Judge Bonin then instructed his clerk to "assist [the grandfather] in understanding what to do." The defendant was then placed on ankle monitoring by ETOH.

93. In April 2018, Judge Bonin told a defendant, "within 24 hours of your release from custody, you need to go and get the ankle monitor on. I'm going to send the information to [your attorney] as to where you need to go at your expense." The defendant was then placed on ankle monitoring by ETOH. When the defendant stopped paying ETOH, ETOH began pressuring his girlfriend for payment, including threats to have the defendant jailed if she did not pay. She is a health care provider, and ETOH continues pursuing her for the payment of her ex-boyfriend's fees amid the Coronavirus pandemic.

94. In May 2018, while sentencing a defendant for multiple charges, Judge Bonin "waive[d] any fines and court costs." Later, upon being reminded that the defendant had previously been ordered to ankle monitoring, Judge Bonin inquired, "what service is he with?" Upon learning that it was ETOH, Judge Bonin inquired of the defendant, "How much money do you owe them right now?" Judge Bonin then explained to the defendant, "when you get financially current then they can release you." Judge Bonin concluded, "I'm going to release him subject to satisfying his obligation."

95. In May 2018, Judge Bonin told a juvenile defendant and his mother (a mother of seven), "I'm going to send [your attorney] the information" to sign up for ankle monitoring. Judge Bonin told the mother, "It is at your expense, ma'am." Judge Bonin concluded, "And once I've

confirmed that you have made the financial arrangements with the GPS company, I'll order the release of the bail. Until that time I'm going to hold him until all of those arrangements have been finalized." The defendant was then placed on ankle monitoring by ETOH.

96. In July 2018, Judge Bonin told a defendant, "I'm going to send [your attorney] the information" to sign up for ankle monitoring, and "I need to get a letter from the monitor company saying that you're on the monitor." Judge Bonin explained to the defendant that the "ankle monitor is at your expense" and is "about $300 a month." The defendant was then placed on ankle monitoring by ETOH. In September 2018, ETOH sent Judge Bonin an email updating the judge regarding the defendant's efforts "to catch up on his balance"; this email had no apparent purpose except keeping Judge Bonin apprised of the defendant's financial obligations to ETOH.

97. In August 2018, a juvenile defendant's attorney represented to Judge Bonin that the juvenile's family would arrange for ankle monitoring with a bail bondsman, to which Judge Bonin responded, "No. It's not a bail bondsman. I use a special service." The defendant was then placed on ankle monitoring by ETOH.

98. In August 2018, Judge Bonin told a defendant's attorney, "I'm going to send you an e-mail telling you how to contact the monitoring service that puts the monitors on . . . at his expense . . . ." That same day, Judge Bonin emailed ETOH and the defense attorney together, saying, "I have authorized [the defendant's] release on $15,000 bail conditioned upon him being GPS monitored AT HIS EXPENSE . . . ." The defendant was then placed on ankle monitoring by ETOH.

99. In October 2018, Judge Bonin told a homeless defendant struggling with substance abuse that "before he's released from custody [he] shall be fitted with an ankle monitor for the

purposes of GPS location on him at his expense. And I will send you an e-mail for the family to

get in touch with them so that they know." That same morning, Judge Bonin instructed "the

family [to] contact the ankle monitoring service to make arrangements for the prepayment (on a

monthly basis)." The defendant was then placed on ankle monitoring by ETOH. Judge Bonin's

email explained, "I will consider reducing [the defendant's] bond if necessary to expedite the

process of treatment"; but no such consideration was made regarding payments to ETOH.

100.      In November 2018, after ensuring that "the ankle monitor payment [will be taken

care of] today," Judge Bonin told a defendant and his attorney to "arrange [for ETOH] to go to

the jail and put the monitor on him before he goes home." That same morning, Judge Bonin

emailed ETOH and the defense attorney together, saying, "I have modified the bail conditions of

[the defendant] to require his enrollment with your firm at his expense for GPS monitoring." The

defendant was then placed on ankle monitoring by ETOH.

101.      In December 2018, Judge Bonin told a defendant and his attorney, "I'm not going

to put that [bail] order in until I am notified by the monitoring service that his family has paid for

the monitoring service." The defendant was then placed on ankle monitoring by ETOH.

102.      On at least one occasion in 2019, ETOH emailed Judge Bonin when a defendant

that the company was expecting did not show up, prompting Judge Bonin to threaten the

defendant's immediate arrest—until the defendant's attorney alerted Judge Bonin that the

defendant had complied with Judge Bonin's ankle monitoring order, but had simply done so with

a different company.

103.      To this day, ETOH continues to pursue people for the collection of outstanding

fees accumulated as part of the judge's and the company's practices, including Hakeem, and at

least one person who never appeared before Judge Bonin, but whose ex-boyfriend was ordered to ankle monitoring with ETOH by Judge Bonin.

104.     These practices demonstrate Judge Bonin's and ETOH's joint activity and ETOH's performance of government functions.

105.     As of the date of this complaint, and on information and belief, neither Judge Bonin nor ETOH have directly disclosed their ties to the members of the putative class.

**Class Action Allegations**

106.     Since 2017, Judge Bonin has ordered defendants to pay fees for their own governmental custody to a private company in which the judge has various interests, with neither the judge nor the company disclosing those interests or the availability of alternative providers.

107.     Accordingly, Hakeem and Marshall respectfully seek certification of the following class under Fed. R. Civ. P. 23(b)(2) ("Rule 23(b)(2)"):

> "Every individual who, since January 1, 2017, has been or will be ordered,
> steered, or permitted by Judge Bonin to contract for or otherwise receive or pay
> for ankle monitoring services by ETOH."

108.     This case satisfies the requirements for certification of a class under Fed. R. Civ. P. 23(a) ("Rule 23(a)").

109.     Numerosity under Rule 23(a)(1): The putative class is so numerous that joinder of all members is impracticable. There are at least 52 class members who have been ordered, steered, or otherwise permitted by Judge Bonin to contract for or receive ankle monitoring services with ETOH at their own expense.

110.     Commonality under Rule 23(a)(2): There are questions of law and fact common to the class, namely, whether it violates the Due Process Clause of the Fourteenth Amendment

for a judge to order, steer, or otherwise permit defendants appearing before him to enter into ankle monitoring service agreements with, or pay ankle monitoring fees to, a company with which the judge has personal, financial, professional, and political ties.

111.    Typicality under Rule 23(a)(3): The claims of the representative parties are typical of the claims of the class as a whole in that Hakeem and Marshall have suffered the same constitutional violations as the other members of the class.

112.    Adequacy of representation under Rule 23(a)(4): Hakeem and Marshall will fairly and adequately protect the interests of the class they seek to represent. Hakeem and Marshall are members of the putative class, and their interests are aligned with the interests of putative class members. Hakeem's and Marshall's interests are seeking to end violation of defendants' due process rights by Judge Bonin and ETOH. Hakeem and Marshall seek declaratory and injunctive relief for the injury caused by these practices. These interests are shared by all class members.

113.    Adequacy of class counsel under Rule 23(g): Named Plaintiffs are represented pro bono by the Institute for Justice and by the Law Office of William Most, L.L.C. The Institute is a 501(c)(3) non-profit organization with experience litigating class-action lawsuits around the country, including civil-rights cases involving similar due process claims litigated in federal court in Chicago, Illinois; Philadelphia, Pennsylvania; and Pagedale, Missouri.

114.    The Law Office of William Most, L.L.C. is a law firm based in New Orleans, with experience litigating class-action lawsuits around the country, including a civil rights class-action case under the Fourteenth Amendment in federal court in Louisiana.

115.    The representative parties and their counsel will fairly and adequately protect the interests of the class.

116.    The members of the class are readily and objectively ascertainable because the Orleans Parish Criminal District Court, Judge Bonin's chambers, and ETOH maintain records of every individual who, since January 1, 2017, has been or will be ordered to ankle monitoring by Judge Bonin and has paid, will pay, has incurred, or will incur fees for ankle monitoring by ETOH, and in what amounts.

117.    Class certification is appropriate under Rule 23(b)(2) because Judge Bonin and ETOH have acted or refused to act on grounds and in ways that apply generally to the class, so that declaratory and injunctive relief are appropriate respecting the class as a whole.

118.    Namely, Judge Bonin and ETOH have ordered, steered, or otherwise permitted defendants to pay ankle monitoring fees to a company in which Judge Bonin has personal, financial, professional, and political interests, without disclosure of these interests or of alternative options, and they have conditioned custody determinations on the ability to pay those fees, thus creating a custodial system fraught with bias or the appearance of bias.

119.    A declaration that deprivations of liberty and property pursuant to these practices violate due process because they create bias or the appearance of bias will provide relief for the class as a whole. So, too, will an injunction requiring ETOH to return with interest the fees it has collected from the class since January 1, 2017, and cancel any pending or outstanding fees of the class.

120.    For these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this controversy, and to avoid inconsistent outcomes. Individual challenges to Judge Bonin's and ETOH's practices are impracticable, in part because Judge Bonin's and ETOH's practices remain almost entirely undisclosed to those affected by them, and, in any event, the costs associated with bringing individual challenges would almost

certainly be prohibitive of a full and fair process for vindicating individuals' constitutional rights. A class action will allow for effective, class-wide relief to remedy Judge Bonin's and ETOH's unconstitutional practices.

121.     Injunctive relief for the return of the class's property as a whole is appropriate and does not require individualized determinations of entitlement to relief, but rather only the ministerial act of restoring to each person the amount he or she paid, as documented in Judge Bonin's and ETOH's regularly maintained records, plus a class-wide percentage of interest that also requires no individualized determinations of entitlement.

## Causes of Action

### Count 1
### Class Claim Under 42 U.S.C. § 1983 – Fourteenth Amendment Due Process
### (Both Defendants for Class-Wide Declaratory Relief)

122.     Plaintiffs re-allege and incorporate by reference each and every allegation above.

123.     Plaintiffs bring this claim against both Defendants on behalf of themselves and the class, for class-wide declaratory relief.

124.     The Due Process Clause of the Fourteenth Amendment applies to private actors in joint activity with state actors or performing public or government functions, as is ETOH here.

125.     The Due Process Clause of the Fourteenth Amendment secures the fundamental right to neutrality in judicial decision-making. It prohibits even the appearance of self-interest or bias. A showing of actual influence is not required.

126.     These principles apply to decisions by a judge that benefit or may appear to benefit his or her own personal, financial, professional, political, or institutional interest.

127. These principles also apply to decisions by a judge that benefit or may appear to benefit a third party in which the judge has a personal, financial, professional, political, or institutional interest.

128. Judge Bonin's and ETOH's practice of requiring criminal defendants to pay ankle monitoring fees to ETOH—a company in which the judge has personal, financial, professional, and political interests—and their practice of tying custody determinations to the payment of those fees to ETOH are unconstitutional because, in the absence of adequate disclosures, they demonstrate judicial bias and conflicts of interest, or the appearance of judicial bias and conflicts of interest, in violation of due process.

129. Each class member has suffered and continues to suffer this violation of due process.

## Count 2
### Class Claim Under 42 U.S.C. § 1983 – Fourteenth Amendment Due Process
### (Defendant ETOH Monitoring, LLC for Class-Wide Injunctive Relief)

130. Plaintiffs re-allege and incorporate by reference each and every allegation above.

131. Plaintiffs bring this claim against Defendant ETOH Monitoring, LLC on behalf of themselves and the class, for class-wide injunctive relief.

132. The Due Process Clause of the Fourteenth Amendment applies to private actors in joint activity with state actors or performing public or government functions, as is ETOH here.

133. The Due Process Clause of the Fourteenth Amendment secures the fundamental right to neutrality in judicial decision-making. It prohibits even the appearance of self-interest or bias. A showing of actual influence is not required.

134. These principles apply to decisions by a judge that benefit or may appear to benefit his or her own personal, financial, professional, political, or institutional interest.

135.     These principles also apply to decisions by a judge that benefit or may appear to benefit a third party in which the judge has a personal, financial, professional, political, or institutional interest.

136.     Judge Bonin's and ETOH's practice of requiring criminal defendants to pay ankle monitoring fees to ETOH—a company in which the judge has personal, financial, professional, and political interests—and their practice of tying custody determinations to the payment of those fees to ETOH are unconstitutional because, in the absence of adequate disclosures, they demonstrate judicial bias and conflicts of interest, or the appearance of judicial bias and conflicts of interest, in violation of due process.

137.     Each class member has suffered and continues to suffer this violation of due process.

138.     This Court should issue an order enjoining ETOH from engaging in these unconstitutional practices.

139.     This Court should issue an order enjoining ETOH from reporting or sending to Judge Bonin the ETOH payment history or status of any individual defendant or defendants collectively.

140.     This Court should issue an order enjoining ETOH from invoking Judge Bonin's judicial authority and power to remind defendants of their ETOH fees or to ensure that defendants pay their ETOH fees.

141.     This Court should issue an order enjoining ETOH from collecting pending or outstanding fees incurred by the class pursuant to these unconstitutional practices, and from assessing future fees against the class pursuant to these unconstitutional practices.

142.      This Court should issue a mandatory injunction requiring ETOH to return to the class the fees it has collected from class members since January 1, 2017, with interest, and to cancel any pending or outstanding fees owed by the class.

## Request for Relief

Wherefore, Plaintiffs respectfully request that this Court:

A.  Certify a class under Federal Rule of Civil Procedure 23(b)(2) consisting of: "Every individual who, since January 1, 2017, has been or will be ordered, steered, or permitted by Judge Bonin to contract for or otherwise receive or pay for ankle monitoring services by ETOH."

B.  Issue a class-wide order declaring that, absent full and adequate disclosure by Judge Bonin and ETOH directly to defendants appearing before Judge Bonin of Judge Bonin's and ETOH's personal, financial, professional, and political relationships and of the availability of the alternative ankle monitoring providers, and the defendants' knowing and voluntary consent, it is unconstitutional under the Due Process Clause of the Fourteenth Amendment for Judge Bonin to order, steer, or otherwise permit criminal defendants appearing before him to pay ankle monitoring fees to ETOH, a company in which the judge has personal, financial, professional, and political interests.

C.  Issue a class-wide order declaring that each member of the class has had and continues to have his or her right to due process violated by Judge Bonin's and ETOH's practice of ordering, steering, or otherwise permitting criminal defendants appearing before Judge Bonin to pay ankle monitoring fees to ETOH, a company in which the judge has personal, financial, professional, and political interests.

24

D.  Issue a permanent class-wide injunction enjoining ETOH from entering into contracts, or otherwise agreeing to provide for a fee, ankle monitoring services with defendants appearing before Judge Bonin absent full and adequate disclosure by Judge Bonin and ETOH directly to defendants appearing before Judge Bonin of Judge Bonin's and ETOH's personal, financial, professional, and political relationships and of the availability of alternative ankle monitoring providers, and the defendants' knowing and voluntary consent.

E.  Issue a permanent class-wide injunction enjoining ETOH from reporting or sending to Judge Bonin the ETOH payment history or status of any individual defendant or defendants collectively.

F.  Issue a permanent class-wide injunction enjoining ETOH from invoking Judge Bonin's judicial authority and power to remind defendants of their ETOH fees or to ensure that defendants pay their ETOH fees.

G.  Issue a permanent class-wide injunction enjoining ETOH's collection of pending or outstanding fees incurred by the class, and against assessment of future fees to the class.

H.  Issue a permanent class-wide injunction requiring ETOH to disgorge and return to the class the fees it has collected from class members since January 1, 2017, with interest, and to cancel any pending or outstanding fees owed by the class.

I.  Award Plaintiffs their attorney fees, costs, and expenses under 42 U.S.C. § 1988 and any other applicable provisions of law or equity.

J.  Award Plaintiffs and the class any further equitable or legal relief the Court may deem just and proper.

Dated: May 27, 2020                    Respectfully Submitted,

                                       */s/ William R. Maurer*
                                       William R. Maurer (WA Bar No. 25451)*
                                       INSTITUTE FOR JUSTICE
                                       600 University Street, Suite 1730
                                       Seattle, WA 98101
                                       (206) 957-1300
                                       wmaurer@ij.org

                                       William Most (LA Bar No. 36914)
                                       LAW OFFICE OF WILLIAM MOST, L.L.C.
                                       201 St. Charles Ave., Ste. 114, # 101
                                       New Orleans, LA 70170
                                       (504) 509-5023
                                       williammost@gmail.com

                                       Jaba Tsitsuashvili (DC Bar No. 1601246)*
                                       INSTITUTE FOR JUSTICE
                                       901 North Glebe Road, Suite 900
                                       Arlington, VA 22203
                                       (703) 682-9320
                                       jtsitsuashvili@ij.org

                                       * *Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2020, a copy of the foregoing First Amended Class

Action Complaint for Declaratory and Injunctive Relief was filed electronically with the Clerk of

Court via the CM/ECF system. Notice of this filing will be sent to all counsel of record by

operation of the court's electronic filing system. I further certify that a copy of the foregoing will

be mailed to:

Paul Bonin                             ETOH Monitoring LLC
Orleans Parish Courthouse              427 Gravier Street, 2nd Floor
2nd Floor, Courthouse #13              New Orleans, LA 70130
2700 Tulane Avenue
New Orleans, LA 70119

                                       */s/ William R. Maurer*
                                       William R. Maurer