UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HAKEEM MEADE | CIVIL ACTION |
| VERSUS | 20-1455 |
| PAUL A. BONIN, ET AL. | SECTION: "J" (3) |

### ORDER & REASONS

Before the Court is a *Motion to Dismiss for Failure to State a Claim* **(Rec. Doc. 12)** filed by Defendant, ETOH Monitoring, LLC ("ETOH"). Plaintiffs oppose the motion (Rec. Doc. 24). Having considered the motions and memoranda, the record, and the applicable law, the Court finds that the Motion should be **DENIED**.

### FACTS AND PROCEDURAL BACKGROUND

This proposed class action arises from an alleged conflict of interest in the operations of the Orleans Parish Criminal District Court ("OPCDC").[1] Defendant Judge Bonin is a judge on that court and at times requires defendants released from pretrial custody to wear ankle monitoring devices. OPCDC does not operate its own ankle monitoring service; consequently, when a defendant is ordered to sign up for ankle monitoring, they must choose from among three ankle monitoring providers operating in Orleans Parish, one of which is Defendant ETOH. For these services, ETOH charges defendants a $100 installation fee plus $8.50 to $10 per day.

---

[1] Because this is a motion to dismiss, the Court must accept all facts stated in the complaint as true and view them in the light most favorable to Plaintiffs. *See, e.g.*, *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

Plaintiffs Hakeem Meade and Marshall Sookram were defendants ordered by Judge Bonin to obtain ankle monitoring from ETOH while on pretrial release. Meade had been on pretrial release without monitoring for approximately fifteen months when Judge Bonin ordered him to obtain ankle monitoring from ETOH without explanation in August 2017. Judge Bonin agreed to release him from ankle monitoring in October 2017, at which point Meade had accumulated about $600 in fees owed to ETOH. In at least one subsequent pretrial hearing, Judge Bonin reminded Meade that he still owed money to ETOH and that his failure to pay ETOH could violate his bond conditions. Meade paid some of the fees before pleading guilty and serving his prison sentence. ETOH is still attempting to collect the approximately $322 in ankle monitoring fees that Meade was unable to pay before being incarcerated.

Sookram had been on pretrial release without monitoring for over a month before Judge Bonin ordered him to obtain ankle monitoring at his arraignment. After approximately six months of monitoring by ETOH, ETOH contacted Judge Bonin to confirm that Sookram could be released from monitoring, to which Judge Bonin's assistant replied that he could be released once his balance was paid in full. When ETOH informed Sookram of this condition, Sookram paid at least $500 by borrowing money from his family and was immediately released. He later pleaded guilty and served four days of probation without ankle monitoring.

Plaintiffs allege that Judge Bonin has personal, financial, professional, and political relationships with ETOH's principals, Leonard L. Levenson and Christian

W. Helmke, such that his practices of requiring defendants to pay ankle monitoring fees to ETOH and linking custody determinations to the payment of those fees amount to unconstitutional judicial bias and conflicts of interest. Specifically, Plaintiffs allege that Levenson was Judge Bonin's law partner for over a decade before he was first elected judge, and that Levenson and Helmke donated a total of $8,650 to Judge Bonin's three judicial election campaigns and made one loan of $1,000 to his 2016 campaign for OPCDC. Plaintiffs contend that Judge Bonin's failure to disclose these relationships amounts to, at minimum, the appearance of judicial bias and conflicts of interest in violation of their due process rights. Further, because ETOH imposed and collected fees from them without disclosing these relationships and because Judge Bonin conditioned Plaintiffs' custody determinations on their ability to pay ETOH, Plaintiffs argue that ETOH should be ordered to return any fees collected from class members and to cancel any outstanding fees.[2]

Plaintiffs initiated this lawsuit on May 14, 2020, seeking declaratory relief against both Defendants and injunctive relief against ETOH. Plaintiffs seek a class-wide order declaring that their due process rights were violated and continue to be violated by Judge Bonin and ETOH's practice of "ordering, steering, or otherwise permitting criminal defendants appearing before Judge Bonin to pay ankle monitoring fees to ETOH" without "full and adequate disclosure" of Judge Bonin's

---

[2] Plaintiffs allege that ETOH charge somewhat higher fees than other providers: "Nationally, an ankle monitor typically costs the defendant at least $10 a day, along with an installation fee of $50 to $100 or more," while "ETOH charges defendants . . . a $100 installation fee plus $8.50 to $10 per day (i.e. between $238 and $310 per month)." (Rec. Doc. 7, at 4-5). Plaintiff Sookram initially obtained services from another company that charged him "a $50 installation fee and $10 per day of monitoring" before switching to ETOH. *Id.* at 9.

3

relationships with ETOH and the availability of alternative providers.[3] Plaintiffs also request an injunction against ETOH prohibiting it from (1) charging defendants before Judge Bonin a fee for providing ankle monitoring services without disclosure of their relationships, (2) reporting the payment history or status of any defendant to Judge Bonin, (3) invoking Judge Bonin's judicial authority to ensure that defendants pay their fees, and (4) collecting any pending or outstanding fees incurred by the class and assessing future fees against class members. Plaintiffs further request that ETOH be ordered to disgorge any fees collected from class members since January 1, 2017, with interest, and to cancel any pending or outstanding fees owed by class members.

After Judge Bonin and ETOH filed motions to dismiss Plaintiffs' claims, Plaintiffs voluntarily dismissed their claims against Judge Bonin.[4] ETOH's motion to dismiss is now before the Court on the briefs and without oral argument.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual

---

[3] (First Amended Complaint, Rec. Doc. 7, at 24).
[4] (Rec. Doc. 26); *see In re Amerijet Int'l, Inc.*, 785 F.3d 967, 973 (5th Cir. 2015).

4

allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

ETOH argues that Plaintiffs have failed to state a claim because ETOH is not a state actor, did not act under color of state law, and did not conspire with or act in concert with any state actor. ETOH points out that Plaintiffs have not alleged that it participated in any electronic monitoring orders or had an agreement with Judge Bonin regarding any such orders. ETOH further asserts that the campaign contributions did not violate any law and were properly disclosed and available to the public on the Louisiana Ethics Administration Program's website.

To state a claim under 42 U.S.C. § 1983, a plaintiff must (1) "allege the violation of a right secured by the Constitution and laws of the United States," and (2) "show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To meet the "under color of state law" element, there must be a showing of "some manner of state responsibility for the acts that underlie" the claim. *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 387 (5th Cir. 1985). When a § 1983 claim is brought for violations of the Fourteenth

5

Amendment, the "under color of state law" requirement and the Fourteenth Amendment's "state-action" requirement "converge." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 & n.8 (1999). State action may be found where a private actor's conduct is "fairly attributable" to the State. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). "Fair attribution" requires that (1) the deprivation of a constitutional right was "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor . . . because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

The Supreme Court has developed several tests for determining whether a private actor's conduct constitutes state action. *E.g.*, *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549-50 (5th Cir. 2005) (summarizing tests). Plaintiffs argue that ETOH qualifies as a state actor under the "public function" test.

"Under the Supreme Court's 'public function' test, a private entity acts under color of state law 'when that entity performs a function which is traditionally the exclusive province of the state.'" *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 460 (5th Cir. 2003) (per curiam) (citation omitted). "'[W]hen private individuals or groups are endowed by the State with powers or functions governmental in nature,

6

they become agencies or instrumentalities of the State and subject to its constitutional limitations.'" *Id.* (quoting *Evans v. Newton*, 382 U.S. 296, 299 (1966)).

"Deciding whether a deprivation of a protected right is fairly attributable to the State 'begins by identifying the specific conduct of which the plaintiff complains.'" *Cornish*, 402 F.3d at 550 (quoting *Sullivan*, 526 U.S. at 51). Thus, the Fifth Circuit has held that corporations operating private prisons may be sued under § 1983 by prisoners for constitutional injury, *Rosborough*, 350 F.3d at 461, but not by an employee for retaliatory discharge in violation of the First and Fourteenth Amendments, where there was no allegation that the state compelled or participated in the termination decision, *Cornish*, 402 F.3d at 550-51. "[C]onfinement of wrongdoers–though sometimes delegated to private entities–is a fundamentally governmental function." *Rosborough*, 350 F.3d at 461; *see also Stephens v. Corr. Servs. Corp.*, 428 F. Supp. 2d 580, 584 (E.D. Tex. 2006) ("The maintenance of a prison system is something 'traditionally reserved to the state.'" (quoting *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991)).

In *Ayo v. Dunn*, the court held that a private corporation providing pretrial supervision services for the 19th Judicial District Court was a state actor because "pretrial detention and supervision are traditionally state functions." No. 17-526, 2018 WL 4355199, at *2 (M.D. La. Sept. 12, 2018). Similarly, in *Jones v. County of Suffolk*, the court held that a private organization was a state actor because it had been "delegated . . . the inherently public function of monitoring registered sex offenders." 164 F. Supp. 3d 388, 396 (E.D.N.Y. 2016).

Here, prior to 2016, the City of New Orleans contracted with the Orleans Parish Sheriff's Office to conduct ankle monitoring of pretrial defendants in OPCDC.[5] Since 2016, two private companies, one of which is ETOH, as well as the Gretna Police Department's Home Incarceration Program have provided these services for OPCDC.[6] Ankle monitoring is an alternative to pretrial detention that allows the monitoring entity to determine whether a defendant is complying with a curfew or geographic restrictions imposed by OPCDC.[7]

Nevertheless, ETOH raises a series of incoherent arguments that it is not a state actor. It first conflates the requirements of the public function test with the joint action test. *See, e.g.*, *Cornish*, 402 F.3d at 549-50 (describing different tests). In *Ballard v. Wall*, which ETOH cites, the Fifth Circuit relied on the "joint action" test in holding that the defendants were state actors. *See* 413 F.3d 510, 519 (citing *Dennis v. Sparks*, 4429 U.S. 24, 28 (1980)). ETOH quotes but then ignores language from *Lugar* indicating that joint activity may not be necessary where an actor's "conduct is otherwise chargeable to the State." 457 U.S. at 937.

ETOH next attempts to distinguish *Rosborough* as "clearly inapposite" but fails to explain why. Tellingly, while ETOH also attempts to distinguish *Ayo* and

---

[5] Office of Inspector General, City of New Orleans, *Evaluation of the City's Electronic Monitoring Program Administered by the Orleans Parish Sheriff's Office* at 2 (Apr. 2, 2014) [hereinafter "OIG Report"], http://nolaoig.gov/index.php?option=com_mtree&task=att_download&link_id=31&cf_id=37; Cooperative Endeavor Agreement Between the City of New Orleans and Orleans Parish Sheriff's Office (Oct. 15, 2010), https://assets.documentcloud.org/documents/1153514/orleans-parish-sheriffs-office-contract-with.pdf. The Court takes judicial notice of these documents pursuant to Federal Rule of Evidence 201(b). *See, e.g.*, *Swindol v. Aurora Flight Sciences Corp.*, 805 F.3d 516, 519 (5th Cir. 2015).
[6] (Rec. Doc. 7, at 4); *see also* Court Watch NOLA, *Orleans Criminal District Court, Magistrate Court & Municipal Court: 2018 Review* at 18 & n.84, https://www.courtwatchnola.org/wp-content/uploads/2018-Annual-Report.pdf.
[7] (Rec. Doc. 7, at 4); *see also* OIG Report, *supra* note 5, at 2.

*Jones*, it fails to cite any case where a "private sector service provider in criminal matters"[8] was found not to be a state actor under the public function test. That is because pretrial supervision, like incarceration of convicted criminals, is "'traditionally the exclusive province of the state.'" *Rosborough*, 350 F.3d at 460 (citation omitted). While ETOH argues that its lack of authority to sanction or penalize any defendant under its supervision makes it not a state actor, it fails to acknowledge the significance of its authority to conduct continuous GPS monitoring of these defendants, authority granted to it *by the state*. As Plaintiffs point out, if ETOH were to engage in such monitoring without authorization from OPCDC, it would likely be committing a crime, which supports the conclusion that it acts as an agent or instrumentality of the state in providing these services. *See Evans*, 382 U.S. at 299.

Accordingly, the Court finds that ETOH is a state actor when it provides ankle monitoring services to criminal defendants because monitoring pretrial defendants is a "fundamentally governmental function" that is "traditionally reserved to the state." *Rosborough*, 350 F.3d at 461; *accord Ayo*, 2018 WL 4355199, at *2.[9]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that ETOH's *Motion to Dismiss for Failure to State a Claim* **(Rec. Doc. 12)** is **DENIED**.

---

[8] (Rec. Doc. 33-2, at 8).
[9] Because the Court concludes that ETOH is a state actor under the public function test, it does not address the parties' arguments under the "joint action" test.

New Orleans, Louisiana, this 4th day of September, 2020.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE