UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HAKEEM MEADE, on behalf of himself and all others similarly situated | CIVIL ACTION |
| VERSUS | 20-1455 |
| PAUL A BONIN, ET AL. | SECTION: "J" (3) |

## ORDER & REASONS

Before the Court is a *Motion for Judgment on the Pleadings* **(Rec. Doc. 58)** filed by Defendant, ETOH Monitoring, LLC ("ETOH"). Plaintiffs oppose the motion (Rec. Doc. 62), and ETOH filed a reply (Rec. Doc. 65). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

This proposed class action arises from an alleged conflict of interest in the operations of the Orleans Parish Criminal District Court ("OPCDC"). Former defendant Paul Bonin[1] was a judge on that court and at times required defendants released from pretrial custody to wear ankle monitoring devices. OPCDC does not operate its own ankle monitoring service; consequently, when a defendant is ordered

---

[1] After this lawsuit was filed, then-Judge Bonin decided not to seek reelection and eventually stepped down from that court. Accordingly, Plaintiffs voluntarily dismissed their claims against him. (Rec. Doc. 26).

to sign up for ankle monitoring, they must choose from among three ankle monitoring providers operating in Orleans Parish, one of which is Defendant ETOH.

Plaintiffs allege that former Judge Bonin had personal, financial, professional, and political relationships with ETOH's principals, Leonard L. Levenson and Christian W. Helmke, such that his practices of requiring defendants to pay ankle monitoring fees to ETOH and linking custody determinations to the payment of those fees amounted to unconstitutional judicial bias and conflicts of interest. Specifically, Plaintiffs allege that Levenson was former Judge Bonin's law partner for over a decade before he was first elected judge, and that Levenson and Helmke donated a total of $8,650 to former Judge Bonin's three judicial election campaigns and made one loan of $1,000 to his 2016 campaign for OPCDC. Plaintiffs contend that former Judge Bonin's failure to disclose these relationships amounts to, at minimum, the appearance of judicial bias and conflicts of interest in violation of their due process rights. Further, because ETOH imposed and collected fees from them without disclosing these relationships and because former Judge Bonin conditioned Plaintiffs' custody determinations on their ability to pay ETOH, Plaintiffs argue that ETOH should be ordered to return any fees collected from class members and to cancel any outstanding fees.

Plaintiffs initiated this lawsuit on May 14, 2020, seeking declaratory and injunctive relief against ETOH. ETOH moved to dismiss the complaint, but the Court denied the motion, finding ETOH to be a state actor in these circumstances.[2] ETOH

---

[2] (Rec. Doc. 39).

now moves for judgment on the pleadings, arguing that Plaintiffs have failed to state a claim that it violated their constitutional rights.

## **LEGAL STANDARD**

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A motion brought pursuant to Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990).

Courts evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). In deciding a motion under Rule 12(c), the Court must determine whether the complaint, viewed in the light most favorable to the plaintiff, states a valid claim for relief. *Id.* While the Court must accept the factual allegations in the pleadings as true, the "plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). The court is not, however, bound to accept as true legal

3

conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

Defendant contends that Plaintiffs have failed to state a due process violation because the relationship between it and former Judge Bonin, as alleged by Plaintiffs, does not rise to the level of unconstitutional potential for bias. Defendant further contends that the circumstances here do not comport with situations where the Supreme Court has found due process violations.

Plaintiffs contend they have stated a claim under the Fifth Circuit's recent decisions in *Cain v. White*, 937 F.3d 446 (5th Cir. 2019), and *Caliste v. Cantrell*, 937 F.3d 525 (5th Cir. 2019), because their allegations establish that "Judge Bonin's and ETOH's relationships (as well as their behavior) demonstrated an incentive, temptation, risk, or appearance of prioritizing ETOH's collection of fees over the state's burden of demonstrating the need for deprivations of liberty in *every* case."[3]

Defendant argues that Plaintiffs have not stated an "institutional incentives" claim under *Caliste* and *Cain* because they do not challenge the system as a whole, but only focus on the relationship between former Judge Bonin and ETOH.

The English common law, upon which the American legal system draws, "assumed that judges could maintain impartiality in the face of most connections to

---

[3] (Rec. Doc. 62, at 20).

4

a case." *Caliste*, 937 F.3d at 527. "But the common law view that judges were incorruptible had a notable exception—when judges might benefit financially." *Id.* at 528. The applicable standards governing the constitutionality of a judge's financial conflict originate with the Supreme Court's decision in *Tumey v. Ohio*, 273 U.S. 510 (1927), which involved a mayor's court used in Ohio villages to prosecute violations of the state Prohibition Act.

> On this "liquor court," the mayor was the judge and could convict without a jury. If the mayor found the defendant guilty, some of the fine the defendant paid would go towards the mayor's "costs in each case, in addition to his regular salary." Portions of the fines the village collected would also go to the prosecutor and officers who investigated the case. If the mayor found the defendant not guilty, neither he nor anyone else working for the village would make money from the case.
>
> Relying on the legal tradition just outlined, the Court held that the liquor court judge's interest in the outcome violated due process. It did not require a showing that the mayor was favoring the prosecution; the financial incentive itself was enough.

*Caliste*, 937 F.3d at 529 (citing *Tumey*, 273 U.S. at 516-19, 521, 523, 531-32). Thus, the Supreme Court held:

> Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused denies the latter due process of law.

*Tumey*, 273 U.S. at 532. The Fifth Circuit has explained that cases applying this standard fall into two general categories: (1) cases where "the financial incentive is unique to the facts of the case";[4] and (2) "cases addressing incentives that a court's

---

[4] *See, e.g.*, *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986) (participation of justice of the Supreme Court of Alabama violated due process where justice was also the lead plaintiff in another case involving a similar claim against a different defendant).

5

structure creates in every case."[5] *Caliste*, 937 F.3d at 530. Plaintiffs contend that this case falls in the second category. Defendant disagrees, arguing that Plaintiffs have not alleged an "institutional incentives" claim because their allegations only concern former Judge Bonin and not the court system as a whole.

In *Cain*, the plaintiffs challenged OPCDC's process for collecting criminal fines and fees, arguing that the authority of the OPCDC judges "over both fines and fees revenue and ability-to-pay determinations violates the Due Process Clause." 937 F.3d at 450. Likewise, in *Caliste*, the plaintiffs argued that the magistrate judge's authority over setting conditions of pretrial release, including whether to require secured money bonds that helped provide funding to OPCDC, and over administering these funds presented an impermissible conflict of interest that violated due process. 937 F.3d at 527. Both cases challenged how OPCDC raised and administered funds irrespective of the specific individuals filling those roles. Here, however, Plaintiffs contend that the "significant personal, financial, professional, and political ties between Judge Bonin and ETOH's principals, as well as the manner in which Judge Bonin and ETOH administered fee-funded ankle monitoring in his court" violated due process.[6]

Accordingly, the Court agrees with Defendant. Plaintiffs' allegations depend on the specific relationship between former Judge Bonin and ETOH and therefore fail to state an institutional incentives claim. *See Brown v. Vance*, 637 F.2d 272, 284 (5th

---

[5] *See, e.g.*, *Ward v. Village of Monroeville*, 409 U.S. 57 (1972) (mayor's court overseeing traffic violations violated due process where mayor was also responsible for village finances).
[6] (Rec. Doc. 62, at 5).

6

Cir. 1981) ("*Tumey* and *Ward* make it clear that a violation of due process occurs when *the system* creates the possibility that judges will fail to hold 'the balance nice, clear and true.'" (emphasis added)). To find that Plaintiffs have stated an institutional incentives claim would require the Court to hold that OPCDC's use of private companies for ankle-monitoring services who could donate to the judges' reelection campaigns violates due process because the judges would face a possible temptation to order more defendants to ankle monitoring with hopes of garnering more campaign contribution. Plaintiffs do not argue as much, and the Court does not so hold.

Plaintiffs do not argue that their allegations state an individual bias claim. But even if they had, the Court finds that their complaint is deficient. In *Caperton v. A.T. Massey Coal Co.*, the Supreme Court identified four factors that suggested "a serious risk of actual bias" based on campaign contributions to a judge: (1) "the contribution's relative size in comparison to the total amount of money contributed to the campaign"; (2) "the total amount spent in the election"; (3) "the apparent effect such contribution had on the outcome of the election"; and (4) the temporal relationship between the support, the judge's election, and the pendency of litigation before the judge that involves the contributor. 556 U.S. 868, 884, 886 (2009). Plaintiffs offer no allegations related to the first three factors. And while some allegations exist for the fourth factor—ETOH's principals donated $3,550 and loaned $1,000 for former Judge Bonin's first and only campaign for an OPCDC judgeship in 2016,[7] and

---

[7] (Rec. Doc. 7, at 11).

Plaintiffs were ordered onto ankle monitoring by former Judge Bonin in 2017,[8] with him ordering Plaintiff Meade to specifically use ETOH[9]—considering the totality of the circumstances and the lack of allegations as to the first three factors, the Court holds that Plaintiffs have failed to state a viable due process claim.

"Not every campaign contribution by a litigant or attorney creates a probability of bias that requires a judge's recusal," and Plaintiffs have not shown that "this is an exceptional case." *Caperton*, 556 U.S. at 884.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that ETOH's *Motion for Judgment on the Pleadings* **(Rec. Doc. 58)** is **GRANTED**, and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 10th day of September, 2021.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[8] *Id.* at 6, 9.
[9] *Id.* at 6.