# United States Court of Appeals
# for the Fifth Circuit

---

No. 21-30620

---

Hakeem Meade, *on behalf of himself and all others similarly situated*; Marshall Sookram,

*Plaintiffs—Appellants*,

*versus*

ETOH Monitoring, L.L.C.,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-1455

---

Before Wiener, Richman, and Willett, *Circuit Judges*.

Priscilla Richman, *Circuit Judge*:*

     Hakeem Meade and Marshall Sookram filed this putative class action under 42 U.S.C. § 1983 against ETOH Monitoring, L.L.C. (ETOH). They allege that ties between ETOH and a former judge resulted in due process violations. ETOH filed a motion for judgment on the pleadings, which the

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

Case: 21-30620   Document: 125-1   Page: 2   Date Filed: 07/12/2025

No. 21-30620

district court granted. Because the ties alleged do not create an unconstitutional risk of judicial bias, we affirm.

I

The case was dismissed under Federal Rule of Civil Procedure 12(c), so in this review, we accept all well-pleaded facts in the complaint as true.[1] Our statement of the facts is based on the complaint's allegations.

In 2006, lawyers Christian Helmke and Leonard Levenson founded ETOH, a company that supplies ankle monitors to defendants in various proceedings before the Orleans Parish Criminal District Court (OPCDC). Ankle monitors are GPS devices for supervising defendants' compliance with curfew and geographical restrictions. Defendants pay for their own ankle monitors, which cost about $300 per month. ETOH was one of three providers of ankle monitors to OPCDC.

In 2016, Paul Bonin was elected as a judge on the OPCDC. During his campaign, Bonin accepted donations totaling $3,550 and a loan of $1,000 from Helmke and Levenson through their law firms. Levenson is Judge Bonin's former law partner. Before serving on the district court, Judge Bonin had been a state appellate judge for eight years. Levenson and Helmke had donated $5,100 to his election campaigns for that position.

When ordering ankle monitoring, Judge Bonin regularly directed defendants to make arrangements with ETOH. He did not disclose the availability of other providers. After defendants obtained monitors, ETOH sent monthly reports to Judge Bonin about their payment status. Judge Bonin warned some defendants that nonpayment could result in their jailing. He conditioned some defendants' release from their ankle monitors on their

---

[1] *Garza v. Escobar*, 972 F.3d 721, 725 (5th Cir. 2020).

Case 2:21-cv-01635-CJB-DMD   Document 129-2   Filed 07/22/25   Page 3 of 9
Case: 21-30620   Document: 125-1   Page: 2   Date Filed: 07/12/2025

2

No. 21-30620

completing payments to ETOH. In one case, Judge Bonin conditioned a defendant's release on completing payment to ETOH even though Judge Bonin considered waiving other costs the defendant was obligated to pay.

Hakeem Meade and Marshall Sookram are former criminal defendants whom Judge Bonin directed to obtain ankle monitors from ETOH. They filed a putative class action against Judge Bonin and ETOH under 42 U.S.C. § 1983, alleging due process violations. They maintain that Judge Bonin's relationship with ETOH demonstrates the appearance or reality of unconstitutional bias.

Significantly, Judge Bonin is not a current party to this case. After Judge Bonin announced that he would not seek reelection in 2020, Meade and Sookram voluntarily dismissed him from the lawsuit.

ETOH is the only remaining defendant. ETOH moved for judgment on the pleadings under Rule 12(c). The district court granted the motion and dismissed the complaint with prejudice, reasoning that the allegations regarding the relationship between ETOH and Judge Bonin failed to state a claim that rose to the level of a due process violation. Meade and Sookram timely appealed to this court.

## II

We review de novo the district court's dismissal of a complaint under Rule 12(c).[2] "The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim."[3] To survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

---

[2] *Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868, 873 (5th Cir. 2021).

[3] *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019).

Case 2:21-cv-01635-CJB Document 129-2 Filed 07/22/25 Page 4 of 9
Case: 21-30620 Document: 125-1 Page: 4 Date Filed: 07/22/2025

No. 21-30620

that is plausible on its face.'"[4]  "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[5]

Section 1983 provides a cause of action against any person who, "under color of" state law, deprives another of "any rights, privileges, or immunities secured by the Constitution."[6] The constitutional right at issue is grounded in the Fourteenth Amendment's Due Process Clause, under which "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."[7] The Due Process Clause "demarks only the outer boundaries of judicial disqualifications."[8] The Supreme Court has recognized that "most matters relating to judicial disqualification [do] not rise to a constitutional level."[9] Instead, they are left to legislative discretion.[10] However, "[i]t is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'"[11] Accordingly, the Due Process Clause imposes a "requirement of neutrality in adjudicative proceedings."[12]

---

[4] See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

[5] Doe v. MySpace, Inc., 528 F.3d 413, 418 (5th Cir. 2008) (alteration in original) (quoting Hughes v. Tobacco Inst., Inc., 278 F.3d 417, 420 (5th Cir. 2001)).

[6] 42 U.S.C. § 1983.

[7] U.S. Const. amend. XIV, § 1.

[8] Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 889 (2009) (quoting Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 828 (1986)).

[9] Id. at 876 (alteration in original) (quoting FTC v. Cement Inst., 333 U.S. 683, 702 (1948)).

[10] Id.

[11] Id. (second alteration in original) (quoting In re Murchison, 349 U.S. 133, 136 (1955)).

[12] Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980).

Case 2:21-cv-01635-CJB Document 129-2 Filed 07/22/25 Page 5 of 9
Case: 21-30620 Document: 129-2 Page: 5 Date Filed: 07/22/2025

No. 21-30620

Actual bias "no doubt" may constitute grounds for relief, but it is unnecessary to establish a violation.[13] Rather, "the Due Process Clause has been implemented by objective standards that do not require proof of actual bias."[14] The test comes from the Supreme Court's 1927 decision in *Tumey v. Ohio*:[15]

> Every procedure which would offer *a possible temptation to the average man as a judge* to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.[16]

"This 'average man as judge' standard—focusing on the strength of the temptation rather than an actual showing of impartiality—has guided the due process inquiry ever since."[17] The inquiry asks whether, "'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'"[18]

Here, Judge Bonin did not disclose any actual bias in favor of ETOH. The question is whether an unconstitutional risk of bias can be inferred from his ties to ETOH. The complaint asserts three connections: the founders of ETOH made campaign contributions to Judge Bonin; an ETOH founder

---

[13] *Caperton*, 556 U.S. at 883.

[14] *Id.*

[15] 273 U.S. 510 (1927).

[16] *Id.* at 532 (emphasis added).

[17] *Caliste v. Cantrell*, 937 F.3d 525, 529 (5th Cir. 2019).

[18] *Caperton*, 556 U.S. at 883-84 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

5

was a former law partner of Judge Bonin's; and ETOH sent reports to Judge Bonin about defendants' payment status.

In *Caperton v. A.T. Massey Coal Co.*,[19] the Supreme Court considered when judicial campaign contributions pose a risk of unconstitutional bias.[20] When assessing the risk, "[t]he inquiry centers on the contribution's relative size in comparison to the total amount of money contributed to the campaign, the total amount spent in the election, and the apparent effect such contribution had on the outcome of the election."[21] "[A]lso critical" is the "temporal relationship" between the campaign contributions, the judge's election, and the allegedly biased conduct.[22]

Applying these factors, the Court held that due process required a judge to recuse himself from a case because of "extraordinary contributions" he had received from a party's CEO.[23] The Court explained that "[n]ot every campaign contribution by a litigant or attorney creates a probability of bias that requires a judge's recusal, but this is an exceptional case."[24] The CEO's $3 million in contributions "eclipsed the total amount spent by all other . . . supporters" and was "$1 million more than the total amount spent by the campaign committees of both candidates combined."[25] The contributions "had a significant and disproportionate influence on the electoral outcome" and "were made at a time when [the CEO] had a vested

---

[19] 556 U.S. 868 (2009).

[20] *Id.* at 872.

[21] *Id.* at 884.

[22] *Id.* at 886.

[23] *Id.* at 872-73, 886-87.

[24] *Id.* at 884.

[25] *Id.*

stake" in a case that the newly elected judge was likely to hear.[26] "On these extreme facts," the Court concluded, "the probability of actual bias rises to an unconstitutional level."[27]

The *Caperton* decision underscored the narrow scope of its holding.[28] The Court emphasized that its recusal jurisprudence has "[i]n each case . . . dealt with extreme facts," which "[t]he Court was careful to distinguish . . . from those interests that would not rise to a constitutional level."[29] "Our decision today addresses an extraordinary situation where the Constitution requires recusal," the Court said, noting that the parties had identified "no other instance involving judicial campaign contributions that presents a potential for bias comparable to the circumstances in this case."[30]

ETOH's contributions do not present an extraordinary instance. During his 2016 OPCDC campaign, Judge Bonin accepted donations from ETOH's founders totaling $3,550 and a loan of $1,000. The complaint does not allege that these contributions were outsized within the context of Judge Bonin's campaign or the election, or that they had any influence on his victory. The 2016 donations did occur close in time to the allegedly biased ankle monitoring decisions, which began in 2017. But temporal proximity alone does not establish a constitutional violation without otherwise

---

[26] *Id.* at 885-86.

[27] *Id.* at 886-87.

[28] *See id.* at 887-90 ("The facts now before us are extreme by any measure. . . . Application of the constitutional standard implicated in this case will thus be confined to rare instances.").

[29] *Id.* at 887.

[30] *Id.*

unexceptional campaign contributions. The contributions here fall far short of the guidelines that *Caperton* satisfied.

The other connections between Judge Bonin and ETOH add little. The relationship between Judge Bonin and his former law partner who founded ETOH does not have constitutional significance. Since its 1927 decision in *Tumey*, and again in *Caperton*, the Court has reiterated that "matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion."[31]

Nor do ETOH's reports to Judge Bonin raise due process concerns. ETOH noted defendants' payment status and asked that defendants be reminded of their payment obligations. There is no allegation that ETOH told Judge Bonin to extend defendants' ankle monitoring until they paid or told him to threaten imprisonment for nonpayment. These are conditions that Judge Bonin imposed without any alleged direction from ETOH.

Our decision does not address the general legality or propriety of Judge Bonin's conduct. We rule only on the question this case presents: whether ETOH had ties with Judge Bonin that created an unconstitutional risk of bias. Unexceptional campaign contributions and past business relations do not present an "extraordinary situation" in which due process is implicated.[32] Individually and in their totality, the ties between ETOH and Judge Bonin do not rise to the level of a constitutional violation.

### III

Meade and Sookram also challenge the district court's decision to dismiss their complaint with prejudice. "We review the district court's

---

[31] *Id.* at 876 (quoting *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)).

[32] *See id.* at 887.

No. 21-30620

decision to grant a motion to dismiss with or without prejudice for abuse of discretion."[33]

Although leave to amend should be freely given, Meade and Sookram did not request it from the district court.[34] They raise it for the first time in their brief to this court.[35] In addition, they fail to indicate what additional facts they could plead to correct the complaint's deficiencies.[36] Under these circumstances, "we have no basis on which to find an abuse of discretion by the district court."[37]

\* \* \*

For the reasons stated, we AFFIRM the district court's judgment.

---

[33] *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010).

[34] *See Cinel v. Connick*, 15 F.3d 1338, 1346 (5th Cir. 1994).

[35] *See id.*

[36] *Sullivan*, 600 F.3d at 551.

[37] *Cinel*, 15 F.3d at 1346.